THE COUNTY OF ANDERSON v. JOHN W. KENNEDY ET AL.

(Case No. 1507.)

1. INJUNCTION — JURISDICTION.— Construing sec. 8, art. V, of the constitution, *held,*

(1) The constitution in that section, by giving express power to issue certain designated writs, after having given a broad and general power to issue all writs necessary to enforce the jurisdiction of the district courts, intended to confer upon such courts a jurisdiction to act *upon persons* under the well settled rules of common law and equity procedure, which jurisdiction it was difficult to define with accuracy in the narrow limits of a constitution.

(2) The express power given in that clause of the constitution to the district courts to issue writs of injunction, other express power being given to issue such writs as might be necessary to enforce the jurisdiction conferred on them, carries with it the power to inquire and determine under what circumstances the facts exist which authorize the issuance of the writ, and this power to inquire is of the very essence of jurisdiction.

(3) That section, while declaring that the district courts shall have power to issue writs of injunction, contains no limitation as to the subject matter or amount necessary to clothe those courts with power to hear and determine, such as is found with reference to other jurisdiction, to be determined by subject matter and amount in controversy.

(4) District courts have the power to issue writs of injunction in cases in which a court of chancery, under the settled rules of equity, would have power to issue them; and this without reference to the amount in controversy, under the express power given in the constitution.

2. INJUNCTION.— An application for injunction, formal in terms, alleging that the county of Anderson, through its officers, was about to sell for taxes about thirteen

different tracts of land, patented to the International & Great Northern R. R. Co., by virtue of certain land certificates issued to the I. & G. N. R. R. Co. under special act of the legislature of March 10, 1875, which by its terms exempted said lands from taxation for twenty-five years from the date of issuance of the certificates; that said sale was about to be made for a tax known as the "subsidy special tax," stated (in connection with other averments found in the statement of this case) a cause which entitled the plaintiff to a writ of injunction.

3. Taxation — Statute construed.— The lands granted to the I. & G. N. R. R. Co., under act of March 10, 1875, are exempt from taxation for the period mentioned in the act, even by counties, cities or towns which had aided by the donation of lands in the construction of that company's road.

Appeal from Anderson. Tried below before the Hon. Peyton F. Edwards.

Suit by appellees to enjoin the county of Anderson and its officers from levying and collecting a special tax, known as the "subsidy special county tax," on certain lands situate in Anderson county, Texas, patented to the International & Great Northern Railroad Company, by virtue of certain land certificates issued to the I. & G. N. R. R. Co. under special act of the legislature, approved March 10, 1875, said lands being purchased by appellees from said company. They claimed that the said lands were, by virtue of the law under which they were issued, exempt from all taxation for twenty-five years from the date of the issuance of the certificates.

In their bill the appellees averred the chartering by the legislature of the state of Texas of the Houston & Great Northern Railroad Company, by special law approved October 22, 1866; the chartering of the International Railroad Company by special act, August 5, 1870; that the legislature promised to the last named company the state's bonds in the sum of $10,000 for each mile the company should construct in compliance with its charter, etc. They averred the building a portion of the road and its acceptance by the state, the demand for the bonds, and the refusal by the state to deliver same. That in the fall of 1873 the International consolidated with the Houston & Great Northern Railroad, under the name of the International & Great Northern Railroad Company, which consolidation was approved by several acts of the legislature, and particularly by act of the 10th of March, 1875, granting relief, etc.; that under said act the legislature granted to the I. & G. N. R. R. Co. "in full settlement and satisfaction of all claims of the International R. R. and of the Houston & Great Northern R. R. Co. against all claims against the state of Texas for bonds under the provisions of the ninth section of act of August 5, 1870, to the I. & G. N. R. R. Co., twenty sections of six hundred and forty acres each of the lands of

Texas, for each mile of road constructed and to be constructed under the charter of the International Company, of date August 5, 1870, and that said lands and certificates therefor should be exempted and released from taxation, state, county, city, municipal and other taxes, for twenty-five years from date of respective certificates issued."

That under authority of this act the lands named in exhibit C of the petition were located and patented, and that the county court of Anderson county, on the 9th of September, 1878, ordered the property of the I. & G. N. R. R. Co. to be all assessed for taxes, for paying the special subsidy tax, to liquidate the bonds and interest to the H. & G. N. R. R. Co.

They averred that this special tax was levied for the years of 1877 and 1878 on thirteen tracts of petitioner's lands named in exhibit B, and advertised same for sale for said taxes, etc.; that the county of Anderson never made any donation of its lands to aid in the construction of the International Railroad; that the company never rendered any of those lands for taxes; that by the terms of the act under which the I. & G. N. R. R. Co. acquired these lands, they are and were exempt from taxation such as is by the county of Anderson sought to be imposed and collected; that the county of Anderson claimed a lien upon the lands for the payment of these taxes, amounting to about $78; that the lands are of the value of $2,000; that if the lands were sold as threatened by the collector for Anderson county, such sale will becloud the plaintiff's title, destroy their market value, and occasion irretrievable and irreparable loss and damage.

They prayed for a decree against the appellants; that the lands were and are exempt from the taxes assessed against them; that the order of the commissioners' court under which they were assessed be vacated and held for naught; that the assessment was and is illegal, and the same be annulled, etc., and for injunction and for its perpetuation. To this petition were added the exhibits A, B and C, to wit: Exhibit A, order of the commissioners' court; exhibit B, advertisement for tax sales; exhibit C, act of legislature under which the land certificates were issued.

To this bill the appellants, being defendants in court below, filed their general demurrer and answer.

Judgment for plaintiffs perpetuating the injunction.

*Gammage & Gregg,* for appellants.

I. The general demurrer reaches the first or any radical or fundamental error in matter of substance committed by plaintiffs, and if

the bill shows upon its face that the district court had no jurisdiction over the matter complained of, the demurrer should have been sustained and the bill dismissed. The State v. Williams, 8 Tex., 265; Warner v. Bailey, 7 Tex., 519; Zacharie v. Bryan, 2 Tex., 274; Horan v. Wahrenberger, 9 Tex., 319; Bliss on Pleading, §§ 406, 413; Red v. Johnson, 53 Tex., 288; Const., art. V, sec. 8; R. S., art. 1117, secs. 4, 5, 6; also arts. 1122, 1124; Mawthe v. Crozier, 50 Tex., 153; Chrisman v. Graham, 51 Tex., 43; Lane v. Dook, 48 Tex., 227.

II. Section 9 of the act of the legislature, approved August 5, 1870, chartering the International Railroad Company, therein granting to said company $10,000 in state bonds for each mile said company may construct of its road, is and was unconstitutional, null and void. Therein a state debt of about $3,000,000 is attempted to be created by special law, in aid of a private enterprise, without providing adequate means for the payment of current interest and two per cent. sinking fund, as required. Const. 1869, art. XII, sec. 19; art. XII, secs. 6, 23.

III. The above named act of 5th of August, 1870, contravenes sec. 17, art. XII, of the constitution of 1869, in embracing more than one object, in this, that it charters a private corporation and also attempts to levy taxes for revenue by a special law. Art. XII, sec. 9.

IV. No taxes can be levied except by general law and for the public use and purposes. Const. 1869, art. XII, sec. 19; Cooley's Const. Lim., 129, 487–495; Cooley on Taxation, 76, 79, 90, 429.

V. Section 1 of the act of 10th of March, 1875 (Special Laws 14th Leg., p. 69), attempting to exempt from taxation lands located by virtue of certificates issued to aid in the construction of the I. & G. N. R. R., was repealed by the constitution of 1876. Const. 1876, art. XVI, sec. 48; Const. 1876, art. VIII, sec. 1.

. . . IX. No state shall pass any law impairing the obligation of contracts, nor shall the legislature of the state pass any retroactive law, or law impairing the obligation of contracts. U. S. Const., art. I, sec. 10; Const. 1869, art. I, sec. 14; Story's Const., sec. 1376; Green v. Biddle, 8 Wheat., 92; Bronson v. Kinzie, 1 How., 319; McCracken v. Howard, 2 How., 612; Bridge Prop'rs v. Hoboken Co., 1 Wall., 146; T. & P. R. R. Co. v. Murphy, 46 Tex., 356; Tax Cases, 2 Otto, 575.

X. Section 9 of the special law of the twelfth legislature, page 104, to incorporate the International R. R. Co., and therein donating the state's bonds for $10,000 per mile to aid in construction of same,

and requiring the comptroller to have assessed a tax upon all property in the state and on all occupations sufficient to pay the interest and to redeem the principal of said bonds, is and was unconstitutional, null and void.   Const. 1869, art. XII, secs. 6 and 17; also secs. 19, 20 and 23; Salem v. People, U. S. Rep.; Olcott v. Supervisors, U. S. Sup. Ct.; Clegg v. State, 42 Tex., 608; Loan Association v. Topeka, 20 Wall., 654.

XI. The special law approved March 10, 1875 (Special Acts 14th Leg., p. 69, ch. 49), is only a recognition of the consolidation of the two railroad companies; and an amendment of their charter, and so much of same as attempts to exempt from all taxation the lands that may be patented by virtue of certificates issued to it, was and is unconstitutional.   Const., art. XII, sec. 19; Clegg v. State, 42 Tex., 608.

XII. If the above proposition should not be sustained, we then say that the legislature cannot by special law annul a judicial decree, nor violate a contract, and hence this act can have no effect upon the decree of the county commissioners' court granting the subsidy to the H. & G. N. R. R., and levying the one per cent. tax to meet the interest and pay the principal.   See authorities under second error assigned; also Dunham v. Chatham, 21 Tex., 240; Lewis v. Castleman, 27 Tex., 421; Williams v. Chandler, 25 Tex., 11; Gould v. West, 32 Tex., 352; Foster v. Wells, 4 Tex., 104; Hatch v. George, 22 Tex., 177.

XIII. In Bledsoe v. I. & G. N. R. R. Co., 40 Tex., 537, the International R. R. Co. appealed to the courts to enforce what seemed to them to be their rights against the state and lost; their claim was defeated; they then abandoned all claim against the state, and had nothing to give the state in consideration for this munificent privilege of exemption.   Hence the exemption was without consideration and void.   Bledsoe v. International R. R. Co., 40 Tex., 537; Tucker v. Ferguson, 22 Wall., 574 et seq.

XIV. If the special law of the 10th of March, 1875, granting the exemption to the I. & G. N. R. R. Co., be considered in the light of a contract between the state and the company, then it is void for want of consideration from the company to the state; and if only a relief bill, same was repealed by the provisions of the constitution of 1876, already cited.   Bledsoe v. Int. R. R. Co., 40 Tex., 537; Bass et al. v. Fontleroy, 11 Tex., 698; Washington U. v. Rowe, 8 Wall., 442; Rector of Christ Ch. v. Co. Phil., 24 How., 300; Penn. & W. R. R. Co. v. Maryland, 10 How., 392; Aspinwall et al. v. Davis, 22 How., 364; Cooley's Const. Lim., 125, 127, 205, 280; Cooley on Taxation, 26, 52 and 53.

XV. In case of doubt as to the legislative intent or authority, in cases of exemption from any of the burdens of persons, or taxation, the doubt is resolvable in favor of the state. (*Semble*, of the county.) Bailey *v.* Maguire, 22 Wall., 216; Delaware R. R. Tax *v.* Maguire, 20 Wall., 61; Cent. R. R. *v.* Georgia, 92 U. S., 674; N. Mo. R. R. Co. *v.* Maguire, 20 Wall., 61.

*Baker & Botts*, for appellees.

STAYTON, ASSOCIATE JUSTICE.— This is a suit by appellees to enjoin the county of Anderson and its officers from levying and collecting a special tax, known as the "subsidy special county tax," on certain lands situate in Anderson county, Texas, patented to the International & Great Northern Railroad Company by virtue of certain land certificates issued to the I. & G. N. R. R. Co. under special act of the legislature, approved March 10, 1875, and said lands being purchased by appellees from said company; they claim that the said lands are, by virtue of the law under which they were issued, exempt from all taxation for twenty-five years from the date of the issuance of the certificates.

There was a general demurrer filed to the petition, which was overruled. There was no plea to the jurisdiction of the court, but it is assigned as error that the court entertained jurisdiction of the case. As it is urged that the court had no jurisdiction over the subject matter of the suit, this question will be considered.

The plaintiffs averred that the taxes for which the lands were about to be sold amounted to less than $100, and that the lands were situated in Anderson county and of value exceeding $2,000. They also alleged that the levy of taxes on the land created a lien thereon, and that the collector of taxes was about to sell the lands, and that such sale would cast a cloud upon the title of the land, and thereby render it unsalable and impair its market value, and that thereby they would be irreparably damaged. They also alleged that the tax claimed was illegal, and set out the grounds which made it illegal.

The jurisdictional question depends upon the true construction of sec. 8, art. V, of the constitution, which, among other things, provides that the district courts shall have jurisdiction "of all suits, complaints or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to $500, exclusive of interest; and the said courts and the judges thereof shall have power to issue writs of

*habeas corpus* in felony cases, *mandamus*, injunction, *certiorari*, and all writs necessary to enforce their jurisdiction."

Under the constitutions of 1845 and 1870, there was no express grant of power to issue writs of injunction such as is found in the present constitution; but under the equity jurisdiction given, which was no broader than is given in the constitution now in force, and with express power only "to issue all writs necessary to enforce their own jurisdiction," the district court had and exercised full jurisdiction to grant injunctions.

The present constitution, in immediate connection with the grant of power to the district courts, limited by named subjects matter or the amount in controversy, is given power "to issue all writs necessary to enforce their jurisdiction, which, as in the constitutions of 1845 and 1870, was sufficient to enable those courts to do, under the power expressly granted, everything requisite to be done; in the same connection, as in no former constitution, express power is given to the district courts to issue writs of *mandamus*, injunction and *certiorari*.

This could not have been deemed necessary to enable these courts to enforce the jurisdiction given, and limited and determined by subjects and amount; for full power, as before said, was expressly given to issue such writs as were necessary for that purpose.

It seems to us, that, by giving the express power to issue certain designated writs, after having given a broad and general power to issue all writs necessary to enforce the jurisdiction of these courts, it was intended to confer upon such courts a jurisdiction to act *upon persons* under the well settled rules of common law and equity procedure, which jurisdiction it was very difficult to define with entire accuracy in the narrow limits of a constitution.

It would seem that the express power to issue a writ of injunction, other express power being given to issue such writs as might be necessary to enforce the jurisdiction of a court otherwise given, must carry with it the power to determine when and whether or not the facts exist which authorize it to issue; if so, this power to inquire is of the very essence of jurisdiction.

In declaring that the district courts shall have power to issue writs of injunction, there is no limitation as to the subject matter or amount necessary to clothe the court with power to hear and determine, as there is in reference to such jurisdiction as is determined by subject matter or amount in controversy.

It would be hard to believe that it was the intention of the constitution to give to no courts the power to hear and determine a

multitude of questions which affect the welfare of the people most vitally, which, however, cannot be exactly measured by dollars and cents or defined by subject matter.   Purvis v. Sherrod, 12 Tex., 160.

If such be true of the present constitution, then the declaration in the bill of rights that " all courts shall be open, and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law," is a mockery.

In sec. 16, art. V, of the constitution we find this declaration: " And the county courts or judges thereof shall have power to issue writs of *mandamus,* injunction, *and all other writs* necessary to the enforcement of the jurisdiction of said courts."   This would seem to restrict the use of the named writs, and to make the same apply to the enforcement of such jurisdiction as had been given by a named subject matter or the amount in controversy, which in the preceding parts of the section had been prescribed.   There is no evidence of such intention in the eighth section of the article.

The powers conferred upon the district courts by the constitution of 1845 were not as clearly expressed as in the present constitution; yet under that constitution injunctions against the enforcement of judgments rendered by justices of the peace for less than $100 were enjoined upon the ground that they were void, and in such cases the district courts, by reason of having jurisdiction of the case through the proceeding for injunction, which was certainly an original and not a revisory proceeding, which the courts were authorized to entertain under the clause giving the district courts superintendence and control over inferior jurisdictions, rendered judgments, in cases when the entire sum claimed was less than $100, for the sum due.   This could only have been done upon the theory that an injunction suit might be maintained in the district court when a less sum than $100 was the amount sought to be enjoined; that this gave the court jurisdiction of the case; and that upon such jurisdiction it could render a judgment upon a claim not sufficient in amount to have given jurisdiction originally.   Such were the cases of Edrington v. Allsbrook, 21 Tex., 189; Criswell v. Bledsoe, 22 Tex., 657.

In the cases of Girardin v. Dean, 49 Tex., 248; Danenhauer v. Devine, 51 Tex., 487; Red v. Johnson, 53 Tex., 288, and in other cases, the difficulty of this question was felt, and in the case last named the court felt impelled to say: " There were special exceptions to the petition, objecting to the jurisdiction of the district court that the amount in controversy was less than $500, and this question

of jurisdiction is urged here by appellee, and claimed to be settled by the case of Girardin v. Dean, 49 Tex., 243. If the petition stated a case in which, on settled principles, equity would interpose to prevent the collection of a state tax, by enjoining the sale about to be made, it would be strange, indeed, if the district court, in a case affecting the title to land and the enforcement of a lien on land, should have no power to grant relief. The amount involved being too small, the county court would also be without jurisdiction, and the remedy, if any, would be in the justice's court. This result is one which, in a case requiring it, might well cause a careful review of the decisions claimed to lead to it."

The consideration of the several provisions of the constitution leads us to the conclusion that the district courts of this state have the power to issue writs of injunction in cases in which a court of chancery, under the settled rules of equity, would have the power to issue them, and this without reference to the amount in controversy, under the express power given in the constitution. The near approach of the close of the term precludes a further consideration of this question, the importance of which is deeply felt.

Considering the fact that some thirteen tracts of land were sought to be sold, which, if the sale was made, might go into the hands of as many different persons, thus entailing a multiplicity of suits to remove cloud from title, as well as the other averments in the petition, we are of the opinion that it states a case which entitled the plaintiff to the relief sought.

The question as to the validity of the tax has been considered in the case of The International & Great Northern Railroad Company v. Anderson County, as well as the several defenses urged by the defendant, and they will not be here again considered.

The only point of difference in the two cases which is of importance is, that, in the case referred to, the tax was levied upon the road and other property of the company which it held under the consolidation, through the charter of the International Railroad Company, while in this case the tax was levied upon land held by purchasers from the company, located and patented under certificates which issued under the act of March 10, 1875.

We are of the opinion that the act did not contemplate that the lands which should be granted under its provisions should be taxed even by counties, cities or towns that had aided by the donation of lands the construction of the International Railroad, and that only the property named in the third clause of the first section of that

act was to be subject to taxation by such counties, cities and towns as had aided by the donation of lands in the construction of the International Railroad.

There being no error in the judgment of the court below, it is affirmed.

AFFIRMED.