YOUNG et al. v. DUDNEY.

(Court of Civil Appeals of Texas. Amarillo. Sept. 25, 1911. Rehearing Denied Nov. 24, 1911.)

1. COURTS (§ 183*)—ACTIONS—JURISDICTION.

The county court has no power to issue an injunction beyond the limits of its jurisdiction as defined by the subject-matter or amount in controversy, and cannot restrain the trustees of an independent school district from proceeding with the trial of charges against the superintendent of the district, which power could only be exercised by the district court under its general equity powers.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 183.*]

2. INJUNCTION (§ 78*)—POWERS OF SCHOOL OFFICERS—TRIAL OF SCHOOL SUPERINTENDENT—EQUITABLE RELIEF.

An injunction does not lie to restrain the trustees of an independent school district empowered by Acts 29th Leg. c. 124, §§ 70, 161, to manage and control the schools and to employ and dismiss teachers, from proceeding to try the superintendent of the district on charges preferred committed subsequent to a decision that such superintendent had been legally employed, and render judgment on the charges.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 78.*]

Appeal from Hardeman County Court; W. S. Banister, Judge.

Action by R. L. Dudney against T. M. Young and others for an injunction. From an order granting the injunction, defendants appeal. Reversed and remanded.

See, also, 140 S. W. 802.

Fires, Decker, Clarke & John, for appellants. Berry & Stokes, J. C. Marshall, and L. P. Bonner, for appellee.

PRESLER, J. This is an appeal from an order granting a writ of injunction by the judge of the county court of Hardeman county, Tex., enjoining and restraining appellants as the trustees of the Chillicothe independent school district in Hardeman county, Tex., from further proceeding with the trial of appellee on certain charges, as set out in appellee's petition and exhibits thereto, which said petition and exhibits in substance are as follows:

"For cause of action, plaintiff represents: That heretofore, to wit on the 4th day of February, 1911, the board of trustees of said district, as then constituted, contracted with him as superintendent of the public schools of said independent school district for the school year of 1911 and 1912. That thereafter, about the first Saturday in May, 1911, four members of the old board's time expired, and the said T. M. Young, J. B. Williams, W. M. Sims, and E. C. Owmby were elected to take their places. That afterwards the remaining three members of the old board resigned, and the remaining members supplied their places and some other vacancies that occurred by resignation until the board of trustees of said independent district is now composed of the seven persons named. That after said contract with this plaintiff as superintendent had been settled upon and accepted by the board as then constituted and this plaintiff, and after the plaintiff had relied on the same until other such positions were filled, and it was too late for him to get a desirable place of like character, the board of trustees of said district refused and failed to recognize said contract, and let it be known to the plaintiff that they would not recognize him as said superintendent for the school year of 1911 and 1912, according to his said contract, and the plaintiff appealed from said action of said board to the county judge and ex-officio county superintendent of public instructions in and for Hardeman county, Tex., which, after a full hearing, with both sides being represented, rendered his decision and judgment, holding that said contract was valid and binding, and that plaintiff was entitled to such position for said school year of 1911 and 1912. The board of trustees of said district appealed from said decision, and the said superintendent of public instructions of the

state of Texas, who, in the latter part of August, 1911, passed upon said matter, and sustained the decision of said county judge and ex-officio superintendent of said Hardeman county to the effect that said contract was valid and binding. That afterwards the said trustees appealed the case to the state board of education of the state of Texas, who, upon hearing, sustained the decision of said state superintendent and said county judge to the effect that said contract was valid and binding, and, in pursuance of said contract and said decisions, this plaintiff on the 4th day of September, 1911, the time set for the opening of said schools, repaired to the school building for the purpose and intention in good faith of opening said schools in accordance with his duties as said superintendent. That some of the defendants herein appeared at the time and refused to recognize the plaintiff as such superintendent, grossly objecting to his performing such services, and he was thereby prohibited from so doing. That afterwards, on or about the 9th day of September, 1911, this plaintiff presented to the Honorable S. P. Huff, judge of the Forty-Sixth judicial district of Texas, his application for an injunction commanding the said trustees to recognize him as such superintendent, and to place him in charge of said schools as such and prohibiting them from in any manner interfering with him or his duties as such, etc. A copy of the order so made by the said S. P. Huff is hereto attached, marked 'Exhibit A,' and made a part hereof. That afterwards, on, to wit, the 16th day of September, 1911, the defendants herein through their attorney notified the plaintiff that they would file charges against him for insubordination, and other charges to be specified when filed, and that one Alber Rogers did on the said 16th day of September, 1911, deliver a paper to this plaintiff, purporting to be a citation from said board of trustees, citing him to appear at Chillicothe on Monday, September 18, 1911, at 10 a. m., to show cause why he should not be removed from any position that he might hold in said public schools. That on said 18th day of September, 1911, charges were filed by said board in a cause or statement styled 'The Trustees of Chillicothe Independent School District, Hardeman County, Texas, vs. R. L. Dudney,' which charges state no material ground for justification for any action against this plaintiff, a copy of which is hereto attached, marked 'Exhibit B,' and made a part hereof. That on said Monday morning, September 18, 1911, this defendant appeared in obedience to such citation after having been unable to procure a copy of said charges after diligent effort until the morning of said September 18th, and requested and moved said board to give him 10 days in which to prepare his answer to said charges; and, if not that long, at least a reasonable time to properly prepare his defense, and said board declined to do so, and gave him until Wednesday morning at 10 o'clock 20th day of September, 1911. That said 20th day of September, 1911, about said hour, the said defendants as said trustees, except J. B. Williams, who was reported sick, assembled and called said cause for trial. Defendant again asked for further time, and stated that under the circumstances he could not properly and safely go to trial, and asked again that he be given 10 days from the date of said services, and, if not, a reasonable time in which to make his defense and prepare for the same. This motion and request was overruled, and then the defendant presented a motion or challenge to the qualification of said trustees, the defendants named herein, to sit in judgment in this case, wherein the record shows that they are the parties plaintiff against the defendant, and for the further reason that they are opposing parties in another suit pending in the district court of Hardeman county, involving to a certain extent some of the same issues. This was also overruled and the trial proceeded. That the said defendants have already consumed virtually a whole day in said inquiry and trial, and the outlook is that it will take several days more to complete the same. That the plaintiff is obliged to be present at said trial in order to protect his interests, and, while he is so present, it necessitates his absence from said schools. Plaintiff further represents to the court that he does not believe that said charges are filed because of any real merit that are in them, but that it is done for the purpose of harassing him and bringing him into disrepute as a school man, and for the purpose of trying to gain advantage on him in the controversy now between the said board of trustees and this plaintiff.

"He further represents: That J. O. Quattlebaum and J. B. Williams, two of said trustees, purporting to act as a grievance committee, preferred said charges. That all of said board ordered them filed, as shown by the copy hereto attached, and that the said J. B. Williams is absent as above stated on account of sickness, and that J. O. Quattlebaum, upon a challenge of his qualifications as above stated, excused himself from sitting in judgment in this case, but at the request of the attorney representing the plaintiffs he is taking an active part in advising said attorney and assisting in conducting said trial, and that all of said defendants are co-operating to a common purpose and a common end in said undertaking. That he has been informed and believes, and charges the fact to be upon said information and belief, that said defendants intend to find against this plaintiff in this proceeding, and will do so unless restrained, notwithstanding the lack of merit in said charges. That this plaintiff has filed his answer denying any merit whatever in any of said charges.

"Plaintiff further represents: That the said trial is a serious detriment to said schools, in that it is taking him away from his duties as superintendent, and has and will cause various teachers to be put upon the witness stand and examined and cross-examined, and likely to engender more or less unpleasantness among the teachers. That large crowds are attending said hearing. That the people are all divided upon the issue, and that there is more or less bad feeling in the community, and to prolong the hearing can only lead to bad results in the judgment of this plaintiff to said schools, to this plaintiff, and the community of Chillicothe and surrounding country throughout the said school district.

"Plaintiff further alleges, and charges the facts to be, that said hearing and said trial is doing and will do him a serious and irreparable injury, in that it is calculated to injure his reputation as a school man, and is putting him to serious financial loss. The said above-named Young, Sims, Williams, Quattlebaum, Bynum, Higginbotham, and Jameson are made defendants both in their individual capacity, as well as trustees of said district in order that the proper judgment may be rendered.

"Wherefore this plaintiff prays that your honor grant him your most gracious writ of injunction against the said defendants prohibiting them from proceeding with said hearing above referred to now going on and pending at Chillicothe, styled 'Trustees of the Chillicothe Independent School District, Hardeman County, Texas, vs. R. L. Dudney,' and from rendering any judgment in said matter, and from filing or hearing any other charges of a similar character, and from any manner interfering with the plaintiff in the proper discharge of his duties as such superintendent for proper service, for cost of suit, and all proper relief of every nature whatsoever."

### Exhibit B.

"Trustees Chillicothe Independent School District, Hardeman County, Texas, vs. R. L. Dudney.

"Comes now J. O. Quattlebaum and J. B. Williams, composing the grievance committee of the above school board, and make and present to said board the following charges against R. L. Dudney, who has assumed and is acting as superintendent of the public schools of said district:

"(1) That said board of trustees did on, to wit, September 4, 1911, request by resolution said R. L. Dudney to signify his intention to teach such classes and grades in the public schools as the board should elect. That the said Dudney in reply to said request, before the pupils of said school and other citizens of the district, stated in a speech that he was superintendent of the schools, would not teach under the direc-

tion of the board, and announced that the board was without authority to compel him to teach classes, and that he would not obey such order.

"(2) That afterwards, on September 11, 1911, the board, by resolution, directed the said Dudney to teach the seventh grade in said schools, which said Dudney willfully refused to comply with, and announced that he would not obey the order of the board.

"(3) That since said order was issued said Dudney has instructed teachers in the schools, over the express order of the board, that he would on Monday, the 18th of September, create two new classes in the high school which he would teach.

"(4) That on September 11, 1911, the board ordered that the student body should not meet except on Friday afternoons. To this the said Dudney replied that he would comply with this order only to the extent that his good judgment should tell him to comply.

"(5) That said Dudney has repeatedly stated that he would remain superintendent of said schools, or there would be no school.

"(5) That the said board has requested the said Dudney to furnish the board with a statement showing the amount and names from whom he had collected for overs and unders in said schools for the year 1910–1911. That he has failed and refused to comply with this request.

"(6) That said Dudney has practically assumed all the duties of the school board, and does not ask for instructions from the board nor consult them, and a few days ago employed some one to repair the pump in the school well without the order of the board, and without the knowledge or consent of the board.

"(7) That the said Dudney did make oath falsely in this: That he stated under oath that the board on Monday September 11, 1911, stated to him that they intended to superintend said schools.

"(8) That he said Dudney is not a man suitable to teach or superintend said schools, in this: that, knowing a large majority of the patrons and children of the district are against him, he has insisted on the performance of a contract made with a board of trustees who were defeated for re-election because they favored that said Dudney teach in said schools."

Exhibit A, attached to said petition, consists of a copy of an order made by Hon. S. P. Huff, judge of the Forty-Sixth judicial district of Texas, on the 9th day of September, 1911, upon the application of the appellee for an injunction, commanding the said trustees to recognize him as superintendent and to place him in charge of said schools as such, and prohibiting said trustees from in any manner interfering with appellee or his duties as such superintendent, etc., which said order of district court,

as set out in said exhibit, is as follows: "The State of Texas, County of Wilbarger —The above and foregoing application was this day presented to me, notice thereof having been given to defendants, ·and, who being present in person or by attorneys and upon hearing, I am of the opinion that the same should be granted. It is therefore ordered that the clerk of the district court of Hardeman county, Texas, file the above petition and answer of the defendants herein, and that he issue a mandatory writ of injunction to the defendants, commanding them and each of them to recognize the plaintiff as superintendent of the public schools of the Chillicothe independent school district, and that they place him in charge thereof as such, and permit him to act and perform his duties as such under the law governing such matters without let or hindrance, and not in any manner interfere with him as such superintendent or his performance of the duties thereof, and prohibiting the defendants named as trustees from paying out any of the funds of the district to any other superintendent or any of said funds that might be necessary to pay plaintiff according to his contract to any other person, and commanding them to issue vouchers to the plaintiff, according to his contract as such superintendent. But this order is not intended to preclude any action that might be taken before any legal and qualified officer or court, provided that in no event shall any such action that might be taken become effective or permit interference in any manner whatever with plaintiff or his duties as such superintendent until any such action as might be taken shall be finally passed on and determined by the highest and last officer, court, or authority to which it could be appealed or presented, and to which either party might elect to so appeal. It is further ordered that the plaintiff file his bond herein in the sum of $100, to be approved by said district clerk."

Upon this petition the county judge of Hardeman county on the 21st day of September, 1911, granted the following order, which is here appealed from: "The State of Texas, County of Hardeman—The above and foregoing application was this day presented to me, and after having read the same and being fully advised in the premises, I am of the opinion that the same should be granted. It is therefore ordered that the clerk of the county court of Hardeman county, Tex., file the above petition, and that he issue writs of injunction to the defendants named, restraining them and each of them from proceeding with the trial of the said cause alleged, styled 'Trustees Chillicothe Independent School District vs. R. L. Dudney,' and from rendering any judgment in said action, and from filing or hearing any other similar charges, and from taking any further action whatever in said matter as prayed for in said petition. Said Dudney

is required to file his bond in the sum of $100."

[1] Under the Constitution and statutes of this state, as construed by our Supreme and appellate courts, conferring power upon our county courts or the judges thereof to issue the writ of injunction, we are unable to find any authority warranting the court in granting this injunction because of any of the matters and charges contained in the foregoing petition, this being an original proceeding for injunction not ancillary to any suit pending in said court, with no ascertainable amount in controversy, and not relating to any subject-matter over which jurisdiction is by law conferred upon the county court, and we are of the opinion that, if the allegations of the petition show equity, the same could only be enforced under the general equity powers of a court of chancery,·unrestricted as to subject-matter or amount in controversy, as is by law conferred in this state exclusively upon our district court. In Anderson County v. Kennedy, 58 Tex. 616, the Supreme Court, construing the Constitution of 1876 (article 5, § 8), says: "In declaring that the district courts shall have power to issue writs of injunction, there is no limitation to the subject-matter or amount necessary to clothe the court with power to hear and determine, as there is in reference to such jurisdiction, as is determined by subject-matter or amount in controversy." And, speaking of the county court, further says, quoting section 16, art. 5, Const.: "And the county courts or judges thereof shall have power to issue writs of mandamus, injunction and all other writs necessary to the enforcement of the jurisdiction of said court." "This would seem to restrict the use of the named writs, and to make the same apply to the enforcement of such jurisdiction as had been given by a named subject-matter or the amount in controversy." We find that under the amendment of 1891 the section and article as amended carries the restriction upon the power of the county courts to issue writs of injunction, and confines the same to enforcement of its jurisdiction, as conferred by subject-matter or amount in controversy. Dean v. State ex rel. Bailey, 88 Tex. 290, 30 S. W. 1047, and 31 S. W. 185. In the case of Lazarus v. Swafford, 15 Tex. Civ. App. 367, 39 S. W. 389, Justice Stephens rendering the opinion, in a very able discussion of article 5 of the Constitution, as affected by the amendment of 1891, the Court of Civil Appeals for the Second District held that the county court has exclusive jurisdiction to issue writs of injunction and mandamus where the amount in controversy is between $200 and $500 in amount, notwithstanding the general power conferred by section 8 of article 5 of the Constitution upon the district courts (we are not aware, however, of this restriction upon the power of the district court having in any case been adopted by the Supreme Court), and holding, further,

that the general provision should be read in the light of the changes wrought by the amendment, and that the intention is clearly indicated to confer upon the county courts as a part of their jurisdiction the power to issue injunctions where courts of chancery under the settled principles of equity would issue them, but limiting such power to cases in which jurisdiction depended upon the amount in controversy, and making that jurisdiction exclusive or concurrent according to the amount.

We nowhere find authority for the county court in the exercise of its power to issue injunctions that go beyond the limits of its jurisdiction as defined by the subject-matter or amount in controversy.

[2] We are further of the opinion that under the statutes of this state (Acts 29th Leg. [1905] c. 124, §§ 70, 161), the appellants (board of trustees) being vested with the power to manage and control said schools and to employ and dismiss teachers, that injunction did not lie in this case to restrain and prohibit appellants from proceeding to try appellee upon such of said charges preferred as relate to acts alleged to have been committed since the decision of the state board of education of the state of Texas was rendered, as referred to in appellee's petition for injunction, of date some time prior to the 4th day of September, 1911, and from rendering judgment on such charges, and from filing and hearing other charges of a similar character. Riggins v. Thompson et al., 30 Tex. Civ. App. 242, 70 S. W. 578; Id., 96 Tex. 154, 71 S. W. 14.

We therefore conclude that the order or judgment of the said county judge of Hardeman county, Tex., granting said writ of injunction, should be here reversed, and that the said injunction as granted should be dissolved; and it is accordingly so ordered.